IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **Civil Action No. 26-cv-2172** |
| **vs.** | **COMPLAINT** |
| **HESS CORPORATION,** | |
| **Defendant.** | |

Plaintiff, the United States of America, by the authority of the Attorney General of the United States, acting at the request of the United States Environmental Protection Agency (EPA), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This civil action seeks civil penalties pursuant to Sections 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b) and (d), against Defendant Hess Corporation ("Hess") for its failure to comply with the conditions and limitations of the National Pollutant Discharge Elimination System ("NPDES") permits issued under Section 402(a) of the Clean Water Act, 33 U.S.C. § 1342(a), that apply to Hess's oil and gas production activities in the western and central portions of the Outer Continental Shelf of the Gulf of America ("GoA").[1] Hess violated the applicable NPDES permits on hundreds of occasions from 2018 through 2023

[1] Pursuant to Executive Order 14172, on February 7, 2026, the Secretary of the Interior renamed the "Gulf of Mexico" to the "Gulf of America." *See* Order No. 3423 (Feb. 7, 2026). Consistent with that Order, the Complaint uses the term "Gulf of America" except where the title of the appliable NPDES permit includes the words "Gulf of Mexico."

by not complying with applicable effluent limitations and requirements for monitoring, sampling, and reporting of discharges.

2. These violations occurred at the following Hess oil and gas production platforms, subsea wells, and contracted mobile offshore drilling units ("MODUs") in the Gulf of America (collectively, the "Hess Facilities"): Baldpate; Gulfstar 1; Stampede; Well A/TB001; Well B/TB002; Well C/TB006; Well No. 3/Esox; Conger No. 10; Well I002/Black Rhino (contracted MODU); Knotty Head No. 1; Well SA003; Well I003; Well SA002; Well I004/Black Lion (contracted MODU); Well SA001; Well SB003. Attachment A to this Complaint describes the CWA violations associated with each of the Hess Facilities.

**JURISDICTION, VENUE, AND AUTHORITY**

3. This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to Sections 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

4. Venue is proper in the Eastern District of Louisiana ("District") pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because Hess is doing business in this District and this District is where two of the three Hess production platforms and many of the subsea wells giving rise to this action are located.

5. Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and 519, and Section 506 of the CWA, 33 U.S.C. § 1366.

**DEFENDANT**

6. Hess is a corporation organized under the laws of Delaware with its principal place of business in New York. Hess is a "person" within the meaning Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

7. At all times relevant to the Complaint, Hess did business in this District.

## STATUTORY AND REGULATORY BACKGROUND

### Clean Water Act and Definitions

8. Congress enacted the CWA "to restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

9. To achieve the CWA's goals, Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person to the waters of the contiguous zone or the ocean, except in compliance with, *inter alia*, the terms and conditions of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

10. Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines "pollutant" to include various substances, including chemical and industrial waste.

11. Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to the waters of the contiguous zone or the ocean from any point source other than a vessel or other floating craft." *See also* 40 C.F.R. § 122.2 (defining "discharge of a pollutant").

12. Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" to mean "any discernible, confined and discrete conveyance, including but not limited to any pipe . . . [or] conduit . . . from which pollutants are or may be discharged."

13. Section 502(9) of the CWA, 33 U.S.C. § 1362(9), defines "contiguous zone" as "the entire zone established or to be established by the United States under article 24 of the Convention of the Territorial Sea and the Contiguous Zone" ("Convention").

14. The United States ratified the Convention in 1961, and the Convention become effective in 1964. Article 24 of the Convention provides that the contiguous zone may not

extend beyond twelve miles from the baseline from which the breadth of the territorial sea is measured.

15. Section 502(10) of the CWA, 33 U.S.C. § 1362(10), defines "ocean" as "any portion of the high seas beyond the contiguous zone."

16. Section 502(23) of the CWA, 33 U.S.C. § 1362(23), defines "oil and gas exploration, production, processing, or treatment operations or transmission facilities" as "all field activities or operations associated with exploration, production, processing, or treatment operations, or transmission facilities, including activities necessary to prepare a site for drilling and for the movement and placement of drilling equipment[.]"

17. Regulations implementing the CWA apply to offshore facilities engaged in "field exploration, drilling, well production, and well treatment in the oil and gas industry" and to facilities that are either fixed or mobile structures. 40 C.F.R. §§ 435.10, 435.11(h), (n), and (cc).

18. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), authorizes EPA to issue a NPDES permit governing discharges of pollutants into the ocean.

19. The CWA defines an "effluent limitation" as any restriction on quantity, rate, and concentration of chemical, physical, biological, and other constituents that are discharged from point sources. Section 502(11) of the CWA, 33 U.S.C. § 1362(11).

20. Effluent limitations are among the conditions and limitations prescribed in NPDES permits issued under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

21. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the commencement of a civil action against any person who violates Section 301(a) of the CWA, 33 U.S.C. § 1311(a), or violates any permit condition or limitation in an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

22. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates a permit condition or limitation in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, shall be liable for civil penalties not to exceed the statutory maximum.

**The GoA NPDES General Permits**

23. Under Section 402(a) of the CWA, 33 U.S.C. § 1342(a), EPA issued a NPDES general permit covering existing and new sources and new dischargers in the "Offshore Subcategory of the Oil and Gas Extraction Point Source Category," located in and discharging to the Outer Continental Shelf offshore of Louisiana and Texas, including, as relevant here, the Mississippi Canyon, Green Canyon, and Garden Banks areas.[2] This permit was in effect from October 1, 2017 through May 10, 2023 ("2017 Permit"). EPA reissued the permit on May 11, 2023, and it remains in effect ("2023 Permit").[3] Together, these general NPDES permits issued in 2017 and reissued in 2023 are referred to herein as the "GoA General Permits" or "the Permits." The provisions of the Permits relevant to this Complaint are identical.

24. As relevant here, the GoA General Permits authorize operators in the Offshore Subcategory of the Oil and Gas Extraction Point Source Category (40 C.F.R. Part 435, Subpart A) located in federal Waters of the Gulf of America seaward of the outer boundary of the

---

[2] "Final NPDES General Permit for New and Existing Sources and New Dischargers in the Offshore Subcategory of the Oil and Gas Extraction Point Source Category for the Western Portion of the Outer Continental Shelf of the Gulf of Mexico (GMG 290000)." 82 Fed. Reg. 45845 (Oct. 2, 2017).

[3] "Final NPDES General Permit for New and Existing Sources and New Dischargers in the Offshore Subcategory of the Oil and Gas Extraction Category for the Western and Central Portion of the Outer Continental Shelf of the Gulf of Mexico (GMG 290000)." 88 Fed. Reg. 36316 (June 2, 2023).

territorial seas off Louisiana and Texas to discharge to federal waters only in accordance with the conditions of the Permits. GoA General Permits Part I.A.1.

25. Under the GoA General Permits, an "[o]perator" includes, among other persons, any party that "possesses the lease for the block where the exploration, development, or production activity will take place and has operational control over" those "activities, including the ability to hire or fire cont[r]actors who conduct the actual work that results in discharges regulated by the permit" and operators of vessel or other mobile facilities. *Id.* Part I.A.2.

26. The GoA General Permits define "facility" as an exploratory facility, a development facility, or a production facility as defined in 40 C.F.R. § 435.11. *Id*. Part II.G and Part I.A.2.

27. The GoA General Permits establish effluent limitations, prohibitions, reporting requirements, and other conditions on discharges from, among other sources, oil and gas facilities engaged in production, exploration, and well treatment, completion, or workover. *Id*. Part I.A.1 and I.B.

28. The GoA General Permits apply to an operator's discharges when EPA accepts an electronic notice of intent ("NOI") submitted by the operator for each facility. Operators must submit a separate NOI for each facility before such facility discharges pollutants. Once accepted, EPA assigns permitted feature numbers for each outfall covered by the Permit's effluent limitations and monitoring requirements. *Id*. Part I.A.2.

29. The GoA General Permits set limits on the quantity and concentration of pollutants that each facility may lawfully discharge into the Gulf of America. The Permits each require operators to monitor the discharges from each facility and ensure that the monitoring accurately represents the pollutants discharged from each facility.

30. The Permits also require operators to report monitoring results in quarterly discharge monitoring reports ("DMRs") submitted to EPA for each subject facility and for each permitted feature (or outfall) with a monitoring requirement. *Id*. Part II.D.4.

31. The Permits require the DMRs to include monitoring results for each permitted feature subject to effluent limitations or prohibitions or monitoring requirements. The DMRs for these permitted features must cover each monitoring parameter for each pollutant category. *Id.* Part I.B., Part II.D.4, and Appendix F.

32. The Permits establish monitoring requirements for produced water (i.e., the water "brought up from the hydrocarbon-bearing strata during the extraction of oil and gas") regarding its flow rate, oil and grease composition, toxicity, and free oil content. *Id.* Part I.B.4, Part II.G.66 (2017 Permit), Part II.G.71 (2023 Permit).

33. The Permits define "well treatment fluids" as fluids "used to restore or improve productivity by chemically or physically altering hydrocarbon-bearing strata after a well has been drilled." *Id.* Part II.G.90 (2017 Permit), Part II.G.96 (2023 Permit). Additionally, the Permits define "workover fluids" as certain fluids "used in a producing well to allow safe repair and maintenance or abandonment procedures." *Id.* Part II.G.91 (2017 Permit), Part II.G.97 (2023 Permit). Well treatment and workover fluids move into the well and return to the surface with the produced water. *Id.*

34. Under the GoA General Permits, when well treatment, completion, and workover ("TCW") fluids are commingled and discharged with produced water, the discharges are considered produced water. *Id*. Part I.B.6.b (2017 Permit), Part I.B.6.c (2023 Permit).

35. The GoA General Permits establish monitoring requirements for free oil and oil and grease for TCW fluids, including setting methods and frequencies for performing monitoring. *Id*. Part I.B.6.a (2017 Permit), Part I.B.6.b (2023 Permit).

## **GENERAL ALLEGATIONS**

36. Hess develops and produces natural gas and oil in the Gulf of America, among other locations.

37. The Gulf of America is a water of the contiguous zone and the ocean within the meaning of Sections 502(9) and (10) of the CWA, 33 U.S.C. §§ 1362(9) and (10), respectively.

38. At all times relevant to the Complaint, Hess owned or operated Gulfstar 1, an oil and gas production platform located in Mississippi Canyon Lease Block 724 in the Gulf of America. Gulfstar 1 is located about 94 nautical miles offshore of Louisiana.

39. At all times relevant to the Complaint, Hess owned or operated Baldpate, an oil and gas production platform located in Garden Banks Lease Block 260 in the Gulf of America. Baldpate is located about 110 nautical miles offshore of Louisiana.

40. At all times relevant to the Complaint, Hess owned or operated Stampede, an oil and gas production platform located in Green Canyon Lease Block 468 in the Gulf of America. Stampede is located about 109 nautical miles offshore of Louisiana.

41. At all times relevant to the Complaint, Hess possessed or held the lease for Mississippi Canyon Lease Block 724, Garden Banks Lease Block 260, and Green Canyon Lease Block 468. Hess acquired these leases from Department of the Interior's ("DOI's") Bureau of Ocean Energy Management under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq*.

42. At all times relevant to the Complaint, each Hess Facility performed oil and gas exploration, development, or production activities in the Gulf of America.

43. At all relevant times to the Complaint, Hess owned, operated, or exercised control over exploration, development, or production activities at the Hess Facilities within the leased areas.

44. At all times relevant to the complaint, each Hess Facility was subject to the conditions and limitations of an applicable Permit.

45. Each outfall identified in the Permit applicable to each Hess Facility is a "point source" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

46. Collectively, the Hess Facilities discharged into the Gulf of America produced water, drilling fluids, well fluids, chemically treated waters, deck drainage, sanitary waste, and miscellaneous discharges as defined in Part I.B. of the GoA General Permits.

47. Since at least 2018, Hess failed to conduct representative sampling as required by the GoA General Permit at three or more Hess Facilities.

48. DMRs show that Hess exceeded the GoA General Permit's effluent limitations on many occasions since at least 2018.

49. Since at least 2018, Hess submitted many DMRs after the applicable deadlines set forth in the GoA General Permit and submitted DMRs that were inaccurate or incomplete.

50. CETCO Energy Services ("CETCO") is a business unit of Mineral Technologies, Inc., located in Houston, Texas, that contracts with oil and gas producers to conduct TCW operations. These operations involve fluid flowback operations, in which fluids used to drill or hydraulically fracture wells return to the surface and must be captured and managed.

51. Baleen Process Solutions, LLC ("Baleen") is a business entity located in New Orleans, Louisiana, that contracts with oil and gas producers to conduct TCW operations that involve fluid flowback operations.

**Inspection of the Gulfstar 1 Platform**

52. On July 25, 2019, inspectors from EPA and DOI's Bureau of Safety and Environmental Enforcement ("BSEE"), which also has regulatory authority over energy production in the OCS, observed that the CETCO equipment on Gulfstar 1 was connected to the produced water discharge line downstream of the NPDES produced water sample point. Additionally, inspectors reviewed monitoring and reporting files and observed effluent limitation and DMR reporting violations.

53. From August 20-23, 2019, EPA conducted an audit at Hess's regional headquarters in Houston, Texas and identified additional effluent limitation, sampling, and DMR reporting violations for Gulfstar 1.

**Inspection of the Baldpate Platform**

54. On May 29, 2019, BSEE inspectors observed several areas of concern at Baldpate, including: DMR inconsistencies and reporting violations, toxicity testing issues, and the failure to conduct visual observations for oil sheens during daylight. Additionally, BSEE inspectors noted that Hess personnel observed miscellaneous discharges at Baldpate but failed to record them on daily spreadsheets as required by the 2017 Permit.

**Inspection of the Stampede Platform**

55. On September 11, 2019, EPA and BSEE inspectors performed an inspection of Stampede and observed that there appeared to be no common representative sampling point to monitor and sample the produced water discharges for oil and grease, and toxicity, and that the

sampled discharges were likely not representative of the combined waste stream when the CETCO equipment was discharging.

56. During the September 11, 2019 inspection, the EPA and BSEE inspectors also observed effluent limitation and sampling and reporting violations.

## FIRST CLAIM FOR RELIEF

Civil Penalties for Violations of the 2017 Permit's Requirements for Representative Monitoring and Sampling Produced Water Discharges
33 U.S.C. § 1319(b) and (d)

57. Paragraphs 1 through 56 of this Complaint are re-alleged and incorporated by reference.

58. The GoA General Permits require that samples of produced water be representative of produced water discharges when, among other pollutants, TCW fluids are used in operations. GoA General Permits Part I.B.4.b.

59. The GoA General Permits also require that samples and measurements taken for compliance under the Permits be "representative of the monitored activity." *Id*. Part II.C.2.

**Gulfstar 1 Platform**

60. From May 2018 to November 2019, Hess used CETCO equipment at least twenty-eight times to process TCW flowback fluids from subsea wells tied into Gulfstar 1. This CETCO equipment was connected by a pipe to Gulfstar 1's produced water discharge line. The connection point was downstream of Gulfstar's NPDES-permitted sample point for produced water.

61. The TCW fluids from the CETCO equipment referenced in the preceding paragraph commingled with produced water in Gulfstar 1's produced water discharge line. Hess discharged these commingled fluids—which constitute produced water—into the Gulf of America.

62. The TCW fluids were not represented in the produced water monitoring and sampling for the platform required by the 2017 Permit. Specifically, Hess did not account for these TCW fluids in its sampling of produced water for the following parameters required by the 2017 Permit: oil and grease, free oil, visual sheens, flow rates, and toxicity. Therefore, Hess's produced water samples for Gulfstar 1 taken from at least May 2018 through November 2019 were not representative of the monitored activity (i.e., Hess's actual produced water discharges).

**Baldpate Platform**

63. From August 2021 through October 2021, Hess used CETCO equipment at least twenty-six times to process TCW flowback fluids from subsea wells tied into Baldpate. This CETCO equipment was connected to Baldpate's produced water discharge line. The connection point was downstream of Baldpate's NPDES-permitted produced water sample point.

64. Upon information and belief, subject to a reasonable opportunity for further investigation or discovery, Hess commingled the TCW fluids referenced in the preceding paragraph with produced water and discharged these fluids—which constitute produced water—into the Gulf of America.

65. Because the TCW fluids referenced in the preceding two paragraphs commingled with produced water at a point downstream of Baldpate's NPDES-permitted sampling point, these fluids were not represented in Hess's produced water monitoring and sampling for Baldpate required by the 2017 Permit. Specifically, Hess did not account for these TCW fluids in its sampling of produced water for the following parameters required by the 2017 Permit: oil and grease, free oil, visual sheens, flow rates, and toxicity. Therefore, Hess's produced water samples for Baldpate taken from August 2021 through October 2021 were not representative of the monitored activity (i.e., Hess's actual produced water discharges).

**Stampede Platform**

66. In January 2018, Hess used CETCO equipment at least nine times to process TCW flowback fluids from subsea wells tied into Stampede. This CETCO equipment was connected by a pipe to Stampede's produced water discharge line. The connection point was downstream of Stampede's NPDES-permitted sample point for produced water.

67. The TCW fluids from the CETCO equipment referenced in the preceding paragraph commingled with produced water in Stampede's produced water discharge line. Hess discharged these commingled fluids—which constitute produced water—into the Gulf of America.

68. The TCW fluids—which constitute produced water—were not represented in the produced water monitoring and sampling for the platform required by the 2017 Permit. Specifically, Hess did not account for these TCW fluids in its sampling of produced water for the following parameters required by the 2017 Permit: oil and grease and toxicity. Therefore, Hess's produced water samples for Stampede taken during January 2018 were not representative of the monitored activity (i.e., Hess's actual produced water discharges).

69. In July 2022, Hess used Baleen equipment at least three times to process TCW flowback fluids from subsea wells tied into Stampede. This Baleen equipment was connected by a pipe to Stampede's produced water discharge line. The connection point was downstream of Stampede's NPDES-permitted sample point for produced water.

70. The TCW fluids from the Baleen equipment referenced in the preceding paragraph commingled with produced water in Stampede's produced water discharge line. Hess discharged these commingled fluids into the Gulf of America. Under the 2017 Permit, the TCW

fluids that commingled and were discharged with produced water are considered produced water. *Id*. Part I.B.6.b.

71. The TCW fluids referenced in the preceding paragraph—which constitute produced water—were not represented in the produced water monitoring and sampling for the platform required by the 2017 Permit. Specifically, Hess did not account for these TCW fluids in its sampling of produced water for the following parameters required by the 2017 Permit: oil and grease, free oil, visual sheens, flow rates, and toxicity for produced water. Therefore, Hess's produced water samples for Stampede taken during January 2018 were not representative of the monitored activity (i.e., Hess's actual produced water discharges).

* * *

72. In total, Hess failed to comply with representative monitoring and sampling requirements of the 2017 Permit for produced water at Gulfstar 1, Baldpate, and Stampede sixty-six times.

73. Each day Hess discharged into the Gulf of America from Gulfstar 1, Baldpate, and Stampede the TCW fluids referenced in Paragraphs 61, 64, 67, and 70 without conducting the monitoring or representative sampling required by the 2017 Permit is a failure to comply with that permit and thus a violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for which relief can be granted under Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d). Table 1 to Attachment B identifies the number of days in each month when these violations occurred at each of these three Hess Facilities.

74. Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), as amended by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461), the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701), and the Federal Civil Penalties Inflation

Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461, Hess is liable for civil penalties of up to $68,445 per day for each violation identified above and in Table 1 to Attachment B.

**SECOND CLAIM FOR RELIEF**

Civil Penalties for Violations of the GoA General Permits' Effluent Limitations
33 U.S.C. § 1319(b) and (d)

75. Paragraphs 1 through 56 of this Complaint are re-alleged and incorporated by reference.

76. The GoA General Permits require Hess to monitor the pollutants in its discharges from the Hess Facilities and report the results in quarterly DMRs. *Id*. Part II.D.4.

77. Between March 2018 and March 2023, Hess violated the effluent limitations in the applicable GoA General Permits at least 378 times, as shown in Hess's DMRs. Table 2 to Attachment B of this Complaint identifies the Hess Facilities that violated the applicable effluent limitations, the parameters exceeded, the period when the violations occurred, and the length of the violations. Table 3 to Attachment B lists the percent exceedance for each time Hess exceeded the daily maximum or monthly average limitations for oil and grease, residual chlorine, and the discharge rate for drilling fluids.

78. Each instance of Hess's failure to comply with an effluent limitation in the applicable GoA General Permit and as identified in Table 2 to Attachment B is a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for which relief can be granted under Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d).

79. Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), as amended by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461), the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701), and the Federal Civil Penalties Inflation

Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461, Hess is liable for civil penalties of up to $68,445 per day for each violation identified in Attachment B.

## THIRD CLAIM FOR RELIEF

Civil Penalties for Violations of the 2017's Permit's Monitoring and Reporting Requirements
33 U.S.C. § 1319(b) and (d)

80. Paragraphs 1 through 56 of this Complaint are re-alleged and incorporated by reference.

81. Between January 2018 and December 2022, Hess failed to comply with the reporting and monitoring requirements prescribed by Part I.B., Part II.D.4, and Appendix F of the applicable GoA General Permits at least 416 times, as shown in Hess's DMRs. Hess's noncompliance included failing to submit DMRs timely and failing to accurately report discharges in its DMRs by:

a. submitting a "No Discharge" DMR for a Hess Facility that was, in fact, operating and discharging during the covered time;

b. submitting DMRs with inaccurate monitoring and reporting data; and

c. submitting DMRs with missing monitoring and reporting data.

Table 4 to Attachment B of this Complaint identifies the Hess Facilities that violated the NPDES reporting and monitoring requirements, the reporting and monitoring parameters that were not complied with, the period when the violations occurred, and the length of the violations.

82. Each failure by Hess to comply with a reporting or monitoring requirement in the 2017 Permit and as identified in Table 4 to Attachment B is a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for which relief can be granted under Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d).

83. Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), as amended by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461), the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701), and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461, Hess is liable for civil penalties of up to $68,445 per day for each violation identified in Table 4 to Attachment B.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests that this Court:

A. Impose civil penalties against Hess for up to the maximum amounts provided in the applicable statutes and regulations, pursuant to Sections 309(d) of the CWA, 33 U.S.C. § 1319(d);

B. Award Plaintiff its costs and expenses incurred in this action; and

C. Grant Plaintiff further relief as the Court may deem just and proper.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division
United States Department of Justice

/s/ Jonah Seligman
Jonah Seligman (LA Bar #38890)
Trial Attorney
Environmental Enforcement Section
Energy and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Jonah.Seligman@usdoj.gov
(202) 353-5505

Attorney for Plaintiff United States of America

OF COUNSEL:
Sajid Chowdhury
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 6
1201 Elm Street
Dallas, TX 75270
Chowdhury.Sajid@epa.gov

**Attachment A**

**Hess Facilities**

**Hess Facilities**

| Facility | Type of Facility | Lease Block | Permitted Feature # | Type of Violation |
|---|---|---|---|---|
| Gulfstar 1 | platform | Miss. Canyon 724 | 0027 | representative sampling, effluent limitation, and reporting |
| Well A/TB001 | subsea well | Miss. Canyon 725 | 0003 | effluent limitation and reporting |
| Well B/TB002 | subsea well | Miss. Canyon 725 | 0001 | reporting |
| Well C/TB006 | subsea well | Miss. Canyon 726 | 0020 | effluent limitation |
| Well No. 3/Esox | subsea well | Miss. Canyon 726 | 0021 | effluent limitation |
| Baldpate | platform | Garden Banks 260 | 0009 | representative sampling |
| Conger No. 10 | subsea well | Garden Banks 215 | 0033 | reporting |
| Stampede | platform | Green Canyon 468 | 0041 | representative sampling |
| Well I002/ Black Rhino | MODU | Green Canyon 468 | 0722 | effluent limitation and reporting |
| Knotty Head No. 1 | subsea well | Green Canyon 512 | 0729 | effluent limitation |
| Well SA003 | subsea well | Green Canyon 512 | 0046 | effluent limitation and reporting |
| Well I003 | subsea well | Green Canyon 512 | 0033 | effluent limitation and reporting |
| Well SA002 | subsea well | Green Canyon 512 | 0032 | reporting |
| Well I004/ Black Lion | MODU | Green Canyon 512 | 0037 | reporting |
| Well SA001 | subsea well | Green Canyon 512 | 0042 | reporting |
| Well SB003 | subsea well | Green Canyon 512 | 0044 | reporting |

**Attachment B**

**Summary of Days of Clean Water Act Violations**

**Table 1 to Attachment B**

**Representative Sampling and Monitoring Violations for Produced Water**

| Platform | Representative Sampling and Monitoring Violations Months and Year | Representative Sampling and Monitoring Violations Number of Days |
|---|---|---|
| **Gulfstar 1** | May 2018 | 6 |
| | August 2018 | 3 |
| | October 2018 | 9 |
| | September 2019 | 3 |
| | October 2019 | 5 |
| | November 2019 | 2 |
| **Baldpate** | August 2021 | 3 |
| | September 2021 | 2 |
| | October 2021 | 21 |
| **Stampede** | January 2018 | 9 |
| | July 2022 | 3 |
| **Total: 66** | | |

## Table 2 to Attachment B

**Effluent Limit Violations – Days of Violations**

| Parameter | Limit | Days of Violations by Year and Quarter | | | | | |
|---|---|---|---|---|---|---|---|
| | | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
| **Gulfstar 1** | | | | | | | |
| Deck Drainage (Free Oil) | Qtr Total (1 d) | | Q1: 1 | | | | |
| Produced Water (Free Oil) | Qtr Total (1 d) | | Q1: 4<br>Q2: 2 | | | | |
| Produced Water | Oil & Grease – Daily Max (42 mg/1) | Q1: 1<br>Q4: 1 | Q1: 1 | | | Q1: 1<br>Q2: 1<br>Q3: 1<br>Q4: 1 | Q1: 1 |
| | Oil & Grease – Monthly Avg. (29 mg/1) | Q1: 28<br>Q4: 30 | Q1: 28 | | | Q1: 31<br>Q2: 30<br>Q3: 30 | Q1: 31 |
| Miscellaneous Discharges (Free Oil) | Qtr Total (1 d) | | Q2:2 | | | | |
| **Well A/TB001** | | | | | | | |
| Well Fluids | Oil & Grease - Daily Max (42 mg/1) | | Q3: 1 | | | | |
| **Well C/TB006** | | | | | | | |
| Deck Drainage (Free Oil) | Qtr Total (1 d) | | Q3: 1 | | | | |
| **Well No. 3/Esox** | | | | | | | |
| Well Fluids | Oil & Grease - Daily Avg. (42 mg/1) | | Q3: 1 | | | | |
| Well Fluids | Oil & Grease - Monthly Avg. (29 mg/1) | | Q3: 30 | | | | |
| **Baldpate** | | | | | | | |
| Deck Drainage (Free Oil) | Qtr Total (1 d) | | Q1: 1<br>Q2: 4 | Q2: 1<br>Q3: 1<br>Q4: 1 | | Q2: 1<br>Q4: 1 | |
| **Stampede** | | | | | | | |
| Deck Drainage (Free Oil) | Qtr Total (1 d) | Q1: 1<br>Q2: 1<br>Q3: 1<br>Q4: 1 | Q3: 3 | Q1: 1<br>Q2: 1 | | | |
| Produced Water | Oil & Grease – Daily Max (42 mg/1) | | | | Q2: 1 | Q3: 1 | Q1: 1 |

| **Parameter** | **Limit** | **Days of Violations by Year and Quarter** | | | | | |
|---|---|---|---|---|---|---|---|
| | | **2018** | **2019** | **2020** | **2021** | **2022** | **2023** |
| | Oil & Grease – Monthly Avg. (29 mg/1) | | | | Q2: 30 | Q3: 31 | Q1: 31 |
| Miscellaneous Discharges (Free Oil) | Qtr Total (1 d) | Q3: 2 | | | | | |
| **Well I002/Black Rhino (MODU)** | | | | | | | |
| Deck Drainage, Free Oil | Qtr Total (1) | | Q2: 1 | | | | |
| **Knotty Head No. 1** | | | | | | | |
| Drilling Fluids, Discharge Rate | 1,000 bbl/hr Max HR rate | | | | Q4: 1 | | |
| **Well SA003** | | | | | | | |
| Deck Drainage (Free Oil) | Qtr Total (1) | Q4: 1 | | | | | |
| **Well I003** | | | | | | | |
| Sanitary waste, residual chlorine | Min 1 mg/1 | Q3: 1 | | | | | |
| **Total: 378** | | | | | | | |

## Table 3 to Attachment B

**Effluent Limit Violations – Percent Exceedances**

| Monitoring Period End Date | Pollutant | Limit Value | Reported DMR Value | Limit Type | % Exceedance |
|---|---|---|---|---|---|
| 3/31/2018 | Oil & Grease | ≤ 29 mg/l | 30.6 mg/l | Average Monthly | 6% |
| 3/31/2018 | Oil & Grease | ≤ 42 mg/l | 61.9 mg/l | Daily Maximum | 47% |
| 9/30/2018 | Residual Chlorine | ≥ 1 mg/l | None – No Sample | Daily Minimum | 100% |
| 12/31/2018 | Oil & Grease | ≤ 29 mg/l | 35.0 mg/l | Average Monthly | 21% |
| 12/31/2018 | Oil & Grease | ≤ 42 mg/ | 75.9 mg/l | Daily Maximum | 81% |
| 3/31/2019 | Oil & Grease | ≤ 29 mg/l | 38.3 mg/l | Average Monthly | 32% |
| 3/31/2019 | Oil & Grease | ≤ 42 mg/ | 177.3 mg/l | Daily Maximum | 322% |
| 9/30/2019 | Oil & Grease | ≤ 42 mg/l | 48.4 mg/l | Daily Maximum | 15% |
| 9/30/2019 | Oil & Grease | ≤ 29 mg/l | 56.45 mg/l | Average Monthly | 95% |
| 9/30/2019 | Oil & Grease | ≤ 42 mg/ | 97.3 mg/l | Daily Maximum | 132% |
| 6/30/2021 | Oil & Grease | ≤ 29 mg/l | 67.9 mg/l | Average Monthly | 134% |
| 6/30/2021 | Oil & Grease | ≤ 42 mg/ | 95.2 mg/l | Daily Maximum | 127% |
| 12/31/2021 | Discharge Rate | <1000 bbl/hr | >1000 bbl/hr | Daily Maximum | 100% |
| 3/31/2022 | Oil & Grease | ≤ 29 mg/l | 232.3 mg/l | Average Monthly | 701% |
| 3/31/2022 | Oil & Grease | ≤ 42 mg/l | 484 mg/l | Daily Maximum | 1052% |
| 6/30/2022 | Oil & Grease | ≤ 29 mg/l | 31 mg/l | Average Monthly | 7% |
| 6/30/2022 | Oil & Grease | ≤ 42 mg/l | 114 mg/l | Daily Maximum | 171% |
| 9/30/2022 | Oil & Grease | ≤ 29 mg/l | 34 mg/l | Average Monthly | 17% |
| 9/30/2022 | Oil & Grease | ≤ 29 mg/l | 35 mg/l | Average Monthly | 21% |
| 9/30/2022 | Oil & Grease | ≤ 42 mg/l | 55 mg/l | Daily Maximum | 31% |
| 9/30/2022 | Oil & Grease | ≤ 42 mg/l | 56 mg/l | Daily Maximum | 33% |
| 12/31/2022 | Oil & Grease | ≤ 42 mg/l | 55 mg/l | Daily Maximum | 31% |
| 3/31/2023 | Oil & Grease | ≤ 29 mg/l | 38.3 mg/l | Average Monthly | 32% |
| 3/31/2023 | Oil & Grease | ≤ 42 mg/l | 67.1 mg/l | Daily Maximum | 60% |
| 3/31/2023 | Oil & Grease | ≤ 29 mg/l | 65 mg/l | Average Monthly | 124% |
| 3/31/2023 | Oil & Grease | ≤ 42 mg/l | 112 mg/l | Daily Maximum | 167% |

**Table 4 to Attachment B**

**Reporting and Monitoring Violations – Late, Inaccurate, or Missing Discharge Monitoring Report Parameters**

| Parameter | Days of Violations by Year and Quarter | | | | |
|---|---|---|---|---|---|
| | 2018 | 2019 | 2020 | 2021 | 2022 |
| **Facility: Gulfstar 1** | | | | | |
| Chemically Treated Discharges | Q3: 2 | Q1: 10 | | | |
| Cooling Water | | Q1: 1 | | | |
| Deck Drainage | | Q1: 1 | | | |
| Hydrate Control Fluids | Q3: 15 | | | | |
| Produced Water | Q1: 20<br>Q2: 21<br>Q3: 14<br>Q4: 19 | Q1: 19 | | | Q1: 3<br>Q3: 17 |
| Sanitary Waste | Q1: 1<br>Q2: 2<br>Q4: 2 | Q1: 1 | | | |
| **Facility: Well B/TB002** | | | | | |
| Well Fluids | Q2: 1 | | | | |
| **Facility: Well A/TB001** | | | | | |
| Sanitary Waste | | Q1: 1 | | | |
| **Facility: Conger No. 10** | | | | | |
| Domestic Waste | Q1: 1 | | | | |
| Sanitary Waste | Q1: 1 | | | | |
| **Facility: Baldpate** | | | | | |
| Deck Drainage | | Q1: 1 | | | |
| Produced Water | Q1: 10<br>Q2: 17<br>Q3: 18<br>Q4: 18 | Q1: 10 | | | |
| Sanitary Waste | Q1: 1<br>Q2: 1 | Q1: 1 | | | |
| **Facility: Stampede** | | | | | |
| Chemically Treated Discharges | Q4: 1 | Q1: 2 | | | |
| Cooling Water | Q4: 1 | Q1: 1 | | | |
| Deck Drainage | Q1: 1<br>Q2: 1<br>Q3: 1<br>Q4: 1 | | | | |
| Domestic Waste | Q3:1 | | | | |
| Miscellaneous Discharges | Q3:1 | | | | |
| Produced Water | Q1: 19<br>Q2: 11<br>Q3: 19<br>Q4: 19 | Q1: 17<br>Q3: 1 | | | Q4: 17 |

| | | | | | |
|---|---|---|---|---|---|
| Sanitary Waste | Q1: 1<br>Q2: 1<br>Q4: 1 | Q1: 1 | | | |
| **Parameter** | **Days of Violations by Year and Quarter** | | | | |
| | **2018** | **2019** | **2020** | **2021** | **2022** |
| **Facility: Well I002/Black Rhino (MODU)** | | | | | |
| Drilling Fluids | | Q1: 1 | | | |
| Stock Base Fluids | | Q1: 2 | | | |
| Sanitary Waste | | Q1: 1 | | | |
| **Facility: Well SA002** | | | | | |
| Sanitary Waste | | Q1: 1 | | | |
| **Facility: Well I003** | | | | | |
| Drilling Fluids | Q1: 1<br>Q2: 1 | | | | |
| Stock Base Fluids | Q1: 3 | | | | |
| Sanitary Waste | Q1: 1<br>Q2: 1 | | | | |
| Well Fluids | Q1: 3<br>Q2: 2 | | | | |
| **Facility: Well I004/Black Lion (MODU)** | | | | | |
| Drilling Fluids | Q4: 1 | | | | |
| Stock Base Fluids | Q3: 6<br>Q4: 5 | | | | |
| Sanitary Waste | Q3: 1 | Q1: 1 | | | |
| **Facility: Well SA001** | | | | | |
| Drilling Fluids | Q1: 4 | | | | |
| Stock Base Fluids | Q1: 7 | | | | |
| Sanitary Waste | Q1: 1 | | | | |
| Well Fluids | Q1: 3 | | | | |
| **Facility: Well SB003** | | | | | |
| Drilling Fluids | Q1: 2<br>Q2: 4 | | | | |
| Stock Base Fluids | Q1: 3 | | | | |
| Sanitary Waste | Q1: 1<br>Q2: 1 | Q1: 1 | | | |
| Well Fluids | Q3: 2 | | | | |
| **Facility: Well SA003** | | | | | |
| Deck Drainage | Q4: 1 | | | | |
| Drilling Fluids | Q2: 3<br>Q3: 2 | | | | |
| Sanitary Waste | Q2: 1<br>Q4: 1 | | | | |
| Well Fluids | Q4: 1 | | | | |
| **Total: 416** | | | | | |